1 | LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2 | SHAWN A. WILLIAMS (213113)
    100 Pine Street, Suite 2600
3 | San Francisco, CA 94111
    Telephone: 415/288-4545
4 | 415/288-4534 (fax)
    shawnw@lerachlaw.com
5 |       – and –
    WILLIAM S. LERACH (68581)
6 | DARREN J. ROBBINS (168593)
    TRAVIS E. DOWNS III (148274)
7 | 655 West Broadway, Suite 1900
    San Diego, CA 92101
8 | Telephone: 619/231-1058
    619/231-7423 (fax)
9 | billl@lerachlaw.com
    darrenr@lerachlaw.com
10 | travisd@lerachlaw.com

11 | Attorneys for Plaintiff

FILED

AUG 2 9 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 | SAN JOSE DIVISION

C 06 5330

15 | DR. IAN BEISER, Derivatively on Behalf of )  No.
     PMC-SIERRA, INC.,                       )
16 |                                          )  VERIFIED SHAREHOLDER DERIVATIVE
                      Plaintiff,             )  COMPLAINT FOR VIOLATION OF THE
17 |                                          )  FEDERAL SECURITIES LAWS AND
              vs.                            )  STATE LAW CLAIMS FOR BREACH OF
18 |                                          )  FIDUCIARY DUTY, ABUSE OF
     ROBERT L. BAILEY, ALAN F. KROCK,        )  CONTROL, CONSTRUCTIVE FRAUD,
19 | GREGORY AASEN, STEFFEN PERNA,           )  CORPORATE WASTE, UNJUST
     COLIN HARRIS, RICHARD E. BELLUZZO,      )  ENRICHMENT, GROSS
20 | JAMES DILLER, SR., MICHAEL FARESE,      )  MISMANAGEMENT, ACTION FOR
     JONATHAN JUDGE, WILLIAM KURTZ and )       ACCOUNTING AND VIOLATIONS OF
21 | FRANK J. MARSHALL,                      )  CALIFORNIA CORPORATIONS CODE
                                             )
22 |                      Defendants,        )
                                             )
23 |          – and –                        )
                                             )
24 | PMC-SIERRA, INC., a Delaware corporation, )
                                             )
25 |          Nominal Defendant.             )  DEMAND FOR JURY TRIAL
    _____ )
26 |

27 |

28 |

ORIGINAL

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action brought by a shareholder of PMC-Sierra, Inc. ("PMC-Sierra" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants").   This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior PMC-Sierra insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to PMC-Sierra insiders.  Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1998.

2.     Between fiscal 1998 and the present, Defendants also caused PMC-Sierra to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by PMC-Sierra carried with them an exercise price that was ***not less than*** the fair market value of PMC-Sierra stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By August 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $154 million worth of PMC-Sierra stock.

4.     PMC-Sierra's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law.  By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused PMC-Sierra to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior PMC-Sierra

1   executives; and (iii) subjected PMC-Sierra to potential liability from regulators, including the SEC

2   and the IRS.

3       5.      Defendants' gross mismanagement and malfeasance over the past decade has exposed

4   PMC-Sierra and its senior executives to criminal and civil liability for issuing false and misleading

5   financial statements.  Specifically, Defendants caused or allowed PMC-Sierra to issue statements

6   that failed to disclose or misstated the following: (i) that the Company had problems with its internal

7   controls that prevented it from issuing accurate financial reports and projections; (ii) that because of

8   improperly recorded stock-based compensation expenses, the Company's financial results violated

9   Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

10  disclosures presented an inflated view of PMC-Sierra's earnings and earnings per share.

11      6.      Defendants' malfeasance and mismanagement during the relevant period has wreaked

12  hundreds of millions of dollars of damages on PMC-Sierra. The Company's senior executives were

13  incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

14  stock options and to issue false financial statements to cover up their misdeeds.  Defendants'

15  breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16  the plans with grant date manipulations so as to void all grants made pursuant to the plans.  The

17  Company has now been mentioned as one of several companies likely to have manipulated options.

18  Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19  and/or knew material non-public information regarding PMC-Sierra's internal control problems,

20  abused their fiduciary relationship with the Company by selling over $154 million worth of their

21  personally held shares at artificially inflated prices during the relevant period.  This action seeks

22  recovery for PMC-Sierra against these faithless fiduciaries, as PMC-Sierra's Board of Directors, as

23  currently composed, is simply unable or unwilling to do so.

24                          **INTRADISTRICT ASSIGNMENT**

25      7.      A substantial part of the events or omissions which give rise to the claims in this

26  action occurred in the county of Santa Clara and as such this action is properly assigned to the San

27  Jose division of this Court.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 2 -

**JURISDICTION AND VENUE**

8.    The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. PMC-Sierra is located in and conducts its business in this District. Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.    Plaintiff Dr. Ian Beiser is, and at all relevant times was, a shareholder of nominal defendant PMC-Sierra.

13.    Nominal party PMC-Sierra is a Delaware corporation with its principal executive offices located at 3975 Freedom Circle, Santa Clara, California.

14.    Defendant Robert L. Bailey ("Bailey") has served as President and Chief Executive Officer ("CEO") of PMC-Sierra since July 1997. Additionally, Bailey has served as a director of PMC-Sierra since October 1996, as Chairman of the Board since May 2005 and as President, CEO and a director of PMC, Ltd., a Canadian operating subsidiary of PMC-Sierra, since December 1993.

1   Because of Bailey's positions, he knew the adverse non-public information about the business of

2   PMC-Sierra, as well as its finances, markets and present and future business prospects, via access to

3   internal corporate documents, conversations and connections with other corporate officers and

4   employees, attendance at management and Board meetings and committees thereof and via reports

5   and other information provided to him in connection therewith.  During the relevant period, Bailey

6   participated in the issuance of false and/or misleading statements, including the preparation of the

7   false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-

8   public information regarding the Company, defendant Bailey violated Cal. Corp. Code §§25402 and

9   25502.5 by selling 2.7 million shares of PMC-Sierra stock for proceeds of $58.4 million during the

10   relevant period.

11   15.     Defendant Alan F. Krock ("Krock") had been Chief Financial Officer ("CFO") and

12   Vice President of Finance and Administration of PMC-Sierra from November 2002.  Because of

13   Krock's positions, he knew the adverse non-public information about the business of PMC-Sierra, as

14   well as its finances, markets and present and future business prospects, via access to internal

15   corporate documents, conversations and connections with other corporate officers and employees,

16   attendance at management meetings and via reports and other information provided to him in

17   connection therewith.  Defendant Krock, by his specialized financial expertise, was in a unique

18   position to understand the business of PMC-Sierra, as well as its finances, markets and present and

19   future business prospects.  During the relevant period, Krock participated in the issuance of false

20   and/or misleading statements, including the preparation of the false and/or misleading press releases

21   and SEC filings.  Based on his knowledge of material non-public information regarding the

22   Company, defendant Krock violated Cal. Corp. Code §§25402 and 25502.5 by selling 256,360

23   shares of PMC-Sierra stock for proceeds of $2.6 million during the relevant period.

24   16.     Defendant Gregory Aasen ("Aasen") has served as Chief Strategy Officer of PMC-

25   Sierra from February 1997 to 2005 and prior to that served as Vice President and General Manager

26   of the Communications Products Division and Chief Operating Officer and Chief Technology

27   Officer of PMC-Sierra.  Aasen is a founder of PMC, Ltd. (a subsidiary of PMC-Sierra) and served as

28   its Chief Operating Officer and Secretary since its formation in June 1992.  Aasen has been a

1    director of PMC, Ltd. since August 1994. Because of Aasen's positions, he knew the adverse non-

2    public information about the business of PMC-Sierra, as well as its finances, markets and present

3    and future business prospects, via access to internal corporate documents, conversations and

4    connections with other corporate officers and employees, attendance at management meetings and

5    via reports and other information provided to him in connection therewith. During the relevant

6    period, Aasen participated in the issuance of false and/or misleading statements, including the

7    preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge

8    of material non-public information regarding the Company, defendant Aasen violated Cal. Corp.

9    Code §§25402 and 25502.5 by selling 1.1 million shares of PMC-Sierra stock for proceeds of $20.7

10   million during the relevant period.

11          17.     Defendant Steffen Perna ("Perna") served as Vice President and General Manager of

12   PMC-Sierra's Microprocessor Products Division from June 2004 until April 2006. Previously,

13   Perna served as Vice President and General Manager of PMC-Sierra from September 1998 to June

14   2004. Perna joined PMC-Sierra in March 1995 as Vice President, Marketing and Business

15   Development. Because of Perna's positions, he knew the adverse non-public information about the

16   business of PMC-Sierra, as well as its finances, markets and present and future business prospects,

17   via access to internal corporate documents, conversations and connections with other corporate

18   officers and employees, attendance at management meetings and via reports and other information

19   provided to him in connection therewith. During the relevant period, Aasen participated in the

20   issuance of false and/or misleading statements, including the preparation of the false and/or

21   misleading press releases and SEC filings. Based on his knowledge of material non-public

22   information regarding the Company, defendant Perna violated Cal. Corp. Code §§25402 and

23   25502.5 by selling 691,045 shares of PMC-Sierra stock for proceeds of $8.0 million during the

24   relevant period.

25          18.     Defendant Colin Harris ("Harris") has served as Vice President, Worldwide

26   Operations of PMC-Sierra since July 2004. Previously, Harris served as Vice President, IC

27   Technology of PMC-Sierra from June 2001 to July 2003. Harris joined PMC-Sierra in 1989 as

28   Operations Manager and was promoted to director of Operations in 1992. Because of Harris'

1 positions, he knew the adverse non-public information about the business of PMC-Sierra, as well as

2 its finances, markets and present and future business prospects, via access to internal corporate

3 documents, conversations and connections with other corporate officers and employees, attendance

4 at management meetings and via reports and other information provided to him in connection

5 therewith. During the relevant period, Harris participated in the issuance of false and/or misleading

6 statements, including the preparation of the false and/or misleading press releases and SEC filings.

7 Based on his knowledge of material non-public information regarding the Company, defendant

8 Harris violated Cal. Corp. Code §§25402 and 25502.5 by selling 144,000 shares of PMC-Sierra

9 stock for proceeds of nearly $1.4 million during the relevant period.

10      19.    Defendant Richard E. Belluzzo ("Belluzzo") has been a director of PMC-Sierra since

11 2003. Because of Beluzzo's position, he knew the adverse non-public information about the

12 business of PMC-Sierra, as well as its finances, markets and present and future business prospects,

13 via access to internal corporate documents, conversations and connections with other corporate

14 officers and employees, attendance at Board meetings and committees thereof and via reports and

15 other information provided to him in connection therewith. During the relevant period, Belluzzo

16 participated in the issuance of false and/or misleading statements, including the preparation of the

17 false and/or misleading press releases and SEC filings. As a member of the Audit Committee,

18 defendant Belluzzo caused or allowed the dissemination of the improper public statements described

19 herein.

20      20.    Defendant James Diller, Sr. ("Diller") founded PMC-Sierra in 1983 and has been a

21 director of the Company since its inception. Previously, Diller served as CEO of PMC-Sierra from

22 1983 to July 1997, President of the Company from 1983 to July 1993 and Chairman of the Board of

23 Directors of PMC-Sierra from July 1993 until February 2000, at which time he became Vice

24 Chairman. Because of Diller's positions, he knew the adverse non-public information about the

25 business of PMC-Sierra, as well as its finances, markets and present and future business prospects,

26 via access to internal corporate documents, conversations and connections with other corporate

27 officers and employees, attendance at Board meetings and committees thereof and via reports and

28 other information provided to him in connection therewith. During the relevant period, Diller

1  participated in the issuance of false and/or misleading statements, including the preparation of the

2  false and/or misleading press releases and SEC filings.  As a member of the Nominating and

3  Governance Committee, defendant Diller caused or allowed the dissemination of the improper public

4  statements described herein.  As a member of the Compensation Committee, defendant Diller

5  controlled the other Defendants' stock option awards.  Based on his knowledge of material non-

6  public information regarding the Company, defendant Diller violated Cal. Corp. Code §§25402 and

7  25502.5 by selling 1.9 million shares of PMC-Sierra stock for proceeds of $60.4 million during the

8  relevant period.

9        21.     Defendant Michael Farese ("Farese") has been a director of PMC-Sierra since May

10  2006.

11       22.     Defendant Jonathan Judge ("Judge") has been a director of PMC-Sierra since 2004.

12  As a member of the Compensation Committee, defendant Judge controlled the other Defendants'

13  stock option awards.  As a member of the Audit Committee, defendant Judge caused or allowed the

14  dissemination of the improper public statements described herein.

15       23.     Defendant William Kurtz ("Kurtz") has been a director of PMC-Sierra since 2003.

16  Because of Kurtz's position, he knew the adverse non-public information about the business of

17  PMC-Sierra, as well as its finances, markets and present and future business prospects, via access to

18  internal corporate documents, conversations and connections with other corporate officers and

19  employees, attendance at Board meetings and committees thereof and via reports and other

20  information provided to him in connection therewith.  During the relevant period, Kurtz participated

21  in the issuance of false and/or misleading statements, including the preparation of the false and/or

22  misleading press releases and SEC filings.  As the Chairperson of the Audit Committee, defendant

23  Kurtz caused or allowed the dissemination of the improper public statements described herein.

24       24.     Defendant Frank J. Marshall ("Marshall") has been a director of PMC-Sierra since

25  1996.  Because of Marshall's position, he knew the adverse non-public information about the

26  business of PMC-Sierra, as well as its finances, markets and present and future business prospects,

27  via access to internal corporate documents, conversations and connections with other corporate

28  officers and employees, attendance at Board meetings and committees thereof and via reports and

1   other information provided to him in connection therewith. During the relevant period, Marshall

2   participated in the issuance of false and/or misleading statements, including the preparation of the

3   false and/or misleading press releases and SEC filings. As a member of the Nominating and

4   Corporate Governance Committee, defendant Marshall caused or allowed the dissemination of the

5   improper public statements described herein. Based on his knowledge of material non-public

6   information regarding the Company, defendant Marshall violated Cal. Corp. Code §§25402 and

7   25502.5 by selling 80,000 shares of PMC-Sierra stock for proceeds of $2.8 million during the

8   relevant period.

9        25.   The defendants identified in ¶¶14 and 19-24 are referred to herein as the "Director

10   Defendants." The defendants identified in ¶¶14-18 are referred to herein as the "Officer

11   Defendants." The defendants identified in ¶¶14-18, 20 and 24 are referred to herein as the "Insider

12   Selling Defendants."

13                                    **DEFENDANTS' DUTIES**

14        26.   Each officer and director of PMC-Sierra named herein owed the Company and PMC-

15   Sierra shareholders the duty to exercise a high degree of care, loyalty and diligence in the

16   management and administration of the affairs of the Company, as well as in the use and preservation

17   of its property and assets. The conduct of PMC-Sierra's directors and officers complained of herein

18   involves knowing, intentional and culpable violations of their obligations as officers and directors of

19   PMC-Sierra. Further, the misconduct of PMC-Sierra's officers has been ratified by PMC-Sierra's

20   Board, which has failed to take any legal action on behalf of the Company against them.

21        27.   By reason of their positions as officers, directors and fiduciaries of PMC-Sierra and

22   because of their ability to control the business and corporate affairs of the Company, the Defendants

23   owed PMC-Sierra and its shareholders fiduciary obligations of candor, trust, loyalty and care, and

24   were required to use their ability to control and manage PMC-Sierra in a fair, just, honest and

25   equitable manner, and to act in furtherance of the best interests of PMC-Sierra and its shareholders

26   so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In

27   addition, as officers and/or directors of a publicly held company, the Defendants had a duty to

28   refrain from utilizing their control over PMC-Sierra to divert assets to themselves via improper

1   and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful

2   information with respect to the Company's operations, earnings and compensation practices.

3         28.    Because of their positions of control and authority as directors or officers of PMC-

4   Sierra, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts

5   complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or

6   acquiescence in Defendants' option backdating scheme; (ii) willingness to cause PMC-Sierra to

7   disseminate false Proxy Statements for 1998-2006, which Proxy Statements failed to disclose

8   Defendants' option backdating scheme and omitted the fact that executive officers were allowed to

9   backdate their stock option grants in order to manipulate the strike price of the stock options they

10   received. Because of their positions with PMC-Sierra, each of the Defendants was aware of these

11   wrongful acts, had access to adverse non-public information and was required to disclose these facts

12   promptly and accurately to PMC-Sierra shareholders and the financial markets but failed to do so.

13         29.    Between 1998 and 2006, Defendants repeated in each Proxy Statement that the stock

14   option grants made during that period carried an exercise price that was not less than the fair market

15   value of PMC-Sierra stock on the date granted, as calculated by the public trading price of the stock

16   at the market's close on that date. However, Defendants concealed until August 2006 that the stock

17   option grants were repeatedly and consciously **backdated** to ensure that the strike price associated

18   with the option grants was at or near the lowest trading price for that fiscal period. Due to

19   Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff

20   seeks to have the directors' and officers' plans voided and gains from those plans returned to the

21   Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to

22   defendants between 1998 and 2002 cancelled, the financial gains obtained via the exercise of such

23   options returned to the Company and to have Defendants revise the Company's financial statements

24   to reflect the truth concerning these option grants.

25         30.    To discharge their duties, the directors of PMC-Sierra were required to exercise

26   reasonable and prudent supervision over the management, policies, practices and controls of the

27   business and financial affairs of PMC-Sierra. By virtue of such duties, the officers and directors of

28   PMC-Sierra were required, among other things, to:

1          (a)     manage, conduct, supervise and direct the business affairs of PMC-Sierra in

2  accordance with all applicable law (including federal and state laws, government rules and

3  regulations and the charter and bylaws of PMC-Sierra);

4         (b)     neither engage in self-dealing nor knowingly permit any officer, director or

5  employee of PMC-Sierra to engage in self-dealing;

6         (c)     neither violate nor knowingly permit any officer, director or employee of

7  PMC-Sierra to violate applicable laws, rules and regulations;

8         (d)     remain informed as to the status of PMC-Sierra's operations, including its

9  practices in relation to the cost of allowing the pervasive backdating and improperly accounting for

10  such, and upon receipt of notice or information of imprudent or unsound practices, to make a

11  reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices

12  and make such disclosures as are necessary to comply with the U.S. federal securities laws and their

13  duty of candor to the Company's shareholders;

14         (e)     prudently protect the Company's assets, including taking all necessary steps to

15  recover corporate assets (cash, stock options) improperly paid to Company executives and directors

16  together with the related costs (professional fees) proximately caused by the illegal conduct

17  described herein;

18         (f)     establish and maintain systematic and accurate records and reports of the

19  business and affairs of PMC-Sierra and procedures for the reporting of the business and affairs to the

20  Board of Directors and to periodically investigate, or cause independent investigation to be made of,

21  said reports and records;

22         (g)     maintain and implement an adequate, functioning system of internal legal,

23  financial and accounting controls, such that PMC-Sierra's financial statements – including its

24  expenses, accounting for stock option grants and other financial information – would be accurate and

25  the actions of its directors would be in accordance with all applicable laws;

26         (h)     exercise control and supervision over the public statements to the securities

27  markets and trading in PMC-Sierra stock by the officers and employees of PMC-Sierra; and

28

1        (i)      supervise the preparation and filing of any financial reports or other

2   information required by law from PMC-Sierra and to examine and evaluate any reports of

3   examinations, audits or other financial information concerning the financial affairs of PMC-Sierra

4   and to make full and accurate disclosure of all material facts concerning, *inter alia,* each of the

5   subjects and duties set forth above.

6        31.     Each Defendant, by virtue of his position as a director and/or officer, owed to the

7   Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due

8   care and diligence in the management and administration of the affairs of the Company, as well as in

9   the use and preservation of its property and assets.  The conduct of the Defendants complained of

10  herein involves a knowing and culpable violation of their obligations as directors and/or officers of

11  PMC-Sierra, the absence of good faith on their part, and a reckless disregard for their duties to the

12  Company and its shareholders which Defendants were aware or should have been aware posed a risk

13  of serious injury to the Company.  The conduct of the Defendants who were also officers and/or

14  directors of the Company during the relevant period has been ratified by the Director Defendants

15  who comprised PMC-Sierra's entire Board during the relevant period.

16       32.     Defendants breached their duties of loyalty and good faith by allowing or by

17  themselves causing the Company to misrepresent its financial results and prospects, as detailed

18  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions.  As a result,

19  PMC-Sierra has expended and will continue to expend significant sums of money.  Such

20  expenditures include, but are not limited to:

21       (a)      improvidently paid executive compensation;

22       (b)      increased capital costs as a result of the loss of market capitalization and the

23  Company's damaged reputation in the investment community;

24       (c)      costs incurred to carry out internal investigations and to prepare and file

25  restated financial statements, including legal fees paid to outside counsel; and

26       (d)      incurring possible IRS penalties for improperly reporting compensation.

27       33.     These actions have irreparably damaged PMC-Sierra's corporate image and goodwill.

28  For at least the foreseeable future, PMC-Sierra will suffer from what is known as the "liar's

1   discount," a term applied to the stocks of companies who have been implicated in illegal behavior
2   and have misled the investing public, such that PMC-Sierra's ability to raise equity capital or debt on
3   favorable terms in the future is now impaired.

4                    **AIDING AND ABETTING AND CONCERTED ACTION**

5           34.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in
6   the pursuit of a common course of conduct and acted in concert with one another in furtherance of
7   their common plan.

8           35.     During all times relevant hereto, Defendants collectively and individually initiated a
9   course of conduct which was designed to and did: (i) conceal the fact that the Company was
10  allowing its directors and senior officers to divert hundreds of millions of dollars to PMC-Sierra
11  insiders and directors and causing PMC-Sierra to misrepresent its financial results; (ii) maintain
12  Defendants' executive and directorial positions at PMC-Sierra and the profits, power and prestige
13  which Defendants enjoyed as a result of these positions; (iii) deceive the investing public, including
14  shareholders of PMC-Sierra, regarding Defendants' compensation practices and PMC-Sierra's
15  financial performance.

16          36.     The purpose and effect of Defendants' common course of conduct was, among other
17  things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross
18  mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning
19  the Company's operation and financial condition and to artificially inflate the price of PMC-Sierra
20  common stock so they could dispose of millions of dollars of their own PMC-Sierra stock, and
21  enhance their executive and directorial positions and receive the substantial compensation they
22  obtained as a result thereof.

23          37.     Defendants accomplished their common enterprise and/or common course of conduct
24  by causing the Company to purposefully and/or recklessly engage in the option backdating scheme
25  alleged herein and misrepresent PMC-Sierra's financial results. Each of the Defendants was a direct,
26  necessary, and substantial participant in the common enterprise and/or common course of conduct
27  complained of herein.

28

38.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

39.     PMC-Sierra designs, develops, markets and supports communications semiconductors, storage semiconductors and microprocessors primarily for the communications service provider, storage and enterprise markets.  The Company has more than 250 different semiconductor devices that are sold to equipment and design manufacturers, who in turn supply their equipment principally to communications network service providers and enterprises.  The Company sells semiconductor solutions primarily into five general areas of the worldwide network infrastructure: access, metro, storage, enterprise and customer premise markets.

40.     Throughout the relevant period, Defendants caused PMC-Sierra to grant them millions of stock options permitting them to buy PMC-Sierra stock for pennies on the dollar which they could in turn sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock at a certain price in the future.  Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

41.     However, many of the millions of options granted to PMC-Sierra's executives had a hidden, valuable component:  they were misdated, often making them even more significantly valuable.  The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

1   complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a

2   grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

3   and although the work is not complete on those grants as of the stated grant date, that date is

4   nonetheless used).

5        42.    Complicating matters and magnifying the harm to PMC-Sierra, during the relevant

6   period, PMC-Sierra's internal controls and accounting controls with respect to option grants and

7   exercises, and its financial reporting, were grossly inadequate.  The weaknesses allowed dates of

8   both grants and exercises to be manipulated and the Company's executive compensation expenses to

9   be materially understated.  They also allowed grant dates to be changed to provide executives with

10   more favorably priced options, in effect augmenting their compensation, with no benefit running to

11   the Company.

12        43.    Specifically, in many instances the reported dates PMC-Sierra stock options were

13   granted differed from the dates on which the options appear to have been actually granted.  The

14   practice applied to the overwhelming majority of stock option grants made during the relevant

15   period, which allowed executives and employees to make more money on their options because it set

16   a lower "strike price" at which the options could be exercised, allowing employees to take larger

17   profits when the stock price later rose.

18        44.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to

19   PMC-Sierra a duty to ensure that the Company's financial reporting fairly presented, in all material

20   respects, the operations and financial condition of the Company.   In order to adequately carry out

21   these duties, it is necessary for the Defendants to know and understand the material non-public

22   information to be either disclosed or omitted from the Company's public statements.  This material

23   non-public information included the problems PMC-Sierra faced because of its deficient internal

24   controls.  Furthermore, defendants who were members of the Audit Committee during the relevant

25   period had a special duty to know and understand this material information as set out in the Audit

26   Committee's charter, which provides that the Audit Committee is responsible for reviewing, in

27   conjunction with management, the Company's policies generally with respect to the Company's

28   earnings press releases and with respect to financial information and earnings guidance provided to

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 14 -

1  analysts and rating agencies.  The Officer Defendants had ample opportunity to discuss this material

2  information with their fellow officers at management meetings and via internal corporate documents

3  and reports.  Moreover, defendants who were directors of PMC-Sierra had ample opportunity to

4  discuss this material information with fellow directors at any of the scores of Board meetings that

5  occurred during the relevant period as well as at committee meetings of the Board.  Despite these

6  duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or

7  inactions, the misleading statements to be disseminated by PMC-Sierra to the investing public and

8  the Company's shareholders during the relevant period.

9       45.     Specifically, since 1998, Defendants have caused PMC-Sierra to report false and

10  misleading fiscal and quarterly financial results which materially understated its compensation

11  expenses and thus overstated its earnings (or understated its losses) as follows:

| FISCAL YEAR[1] | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED BASIC EARNINGS (LOSS) PER SHARE |
|---|---|---|
| 1998 | $(5.95) | $0.27 |
| 1999 | $71.83 | $0.35 |
| 2000 | $75.30 | $0.99 |
| 2001 | $(639.05) | $(0.37) |
| 2002 | $(75.55) | $(0.27) |

46.     Moreover, throughout the relevant period certain of the Defendants and former

officers exercised many of these stock options contributing to their ability to sell over $154 million

worth of PMC-Sierra stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| BAILEY | 11/20/96-5/15/06 | 2,702,840 | $58,452,497 |
| KROCK | 11/15/04-4/28/06 | 256,360 | $2,660,738 |
| DILLER | 8/22/97-2/8/06 | 1,922,364 | $60,407,430 |
| AASEN | 8/26/97-7/28/05 | 1,111,298 | $20,740,252 |
| HARRIS | 7/27/05-2/14/06 | 144,000 | $1,459,260 |

[1]     PMC-Sierra's fiscal year ends on the last Sunday of December.

| PERNA | 7/26/01-2/2/06 | 691,045 | $8,075,651 |
|---|---|---|---|
| MARSHALL | 7/21/00-2/9/06 | 80,000 | $2,805,300 |
| | | | |
| | | | |
| **TOTAL** | | **6,907,907** | **$154,601,128** |

47.     The practice of backdating stock option grants to certain PMC-Siera directors and top executives remained undisclosed to investors and the SEC until August 14, 2006, when PMC-Sierra filed a Form 8-K with the SEC announcing its investigation of its option backdating practices:

> On August 11, 2006, the Audit Committee of PMC-Sierra, Inc. (the "Company") substantially completed a review of the Company's stock option award practices and related accounting. This review is being directed by the Audit Committee comprised of independent directors of the Company's Board of Directors and has been undertaken with the assistance of independent legal counsel. The Audit Committee concluded that, while the Company used incorrect accounting measurement dates for certain stock option grants awarded primarily during the years 1998-2001, those errors were not the product of any deliberate misconduct by the Company's executives, staff, or members of its Board of Directors.

> On August 11, 2006, the Company concluded that, pursuant to the requirements of Accounting Principles Board Opinion No. 25, *Accounting for Stock Issued to Employees* (APB 25) that were in effect prior to 2006, the accounting measurement dates for certain stock option grants awarded primarily during the years 1998-2001 differ from the measurement dates previously used to determine any stock-based compensation expense for the years 1998-2002. The Company has determined that for certain option grants the allocations to individual recipients and/or the proper documentation of formal corporate approvals had not been completed as of the original accounting measurement dates. As a result, new accounting measurement dates are being applied to the affected option grants. As the majority of the stock options in question were cancelled in an option exchange program in 2002, the new measurement dates will not affect operating results for 2003 and subsequent years.

> The Company expects to make accounting adjustments to stockholders' equity as at December 31, 2002 and on the balance sheets for all subsequent periods. The effect of the adjustments will be to increase capital stock and paid-in capital and increase accumulated deficit on all balance sheets commencing in 2003. These are offsetting reclassification entries within stockholders' equity on the balance sheet and the total amount of stockholders' equity in 2003 and subsequent balance sheets will not change. The amount of the adjustment within stockholders' equity is presently estimated by the Company to be less than $100 million. The Company does not expect any restatements of income statements or statements of cash flows in 2003 or subsequent periods. The Company also expects that there will be no impact on the Company's cash position or previously reported revenues.

> The review of stock option awards practices has only recently become substantially completed and the restatement of stockholders' equity at December 31, 2002 and subsequent balance sheets has not yet been concluded. For this reason, the Company did not file its Quarterly Report on Form 10-Q on the due date of August 11, 2006. The Company is using its best efforts to complete and file the Quarterly Report on Form 10-Q for the quarter ended July 2, 2006 as soon as practicable as

well as to complete and file with the Securities and Exchange Commission the following additional forms: (i) Annual Report on Form 10-K/A for 2005 containing the restated financial statements for fiscal years 2003, 2004, and 2005 and (ii) Quarterly Report on Form 10-Q/A for the first quarter ended April 2, 2006 containing restated balance sheets.

Against this background, the Company concluded on August 11, 2006 that the Company's prior financial statements and all financial press releases and similar communications issued by the Company with respect to such income statements and balance sheets for the 1999-2005 fiscal years and subsequent interim period should no longer be relied upon. The Company, including the Audit Committee of the Company's Board of Directors and members of management of the Company, discussed with its independent registered public accounting firm the matters set forth in this Item 4.02.

48. Also, on August 14, 2006, PMC-Sierra issued a press release announcing the Company's completed review of its stock option award practices:

PMC-Sierra, Inc., a leading provider of high-speed broadband communications and storage semiconductors, today announced that its Audit Committee has substantially completed a review of its stock option award practices. This review is being directed by the Audit Committee comprised of independent directors of the Board and has been undertaken with the assistance of independent legal counsel. The Audit Committee has concluded that, while the Company used incorrect accounting measurement dates for certain stock option grants awarded primarily during the years 1998-2001, those errors were not the product of any deliberate misconduct by the Company's executives, staff, or members of its board of directors.

The Company has concluded that, pursuant to the requirements of Accounting Principles Board Opinion No. 25, Accounting for Stock Issued to Employees (APB 25) that were in effect prior to 2006, the accounting measurement dates for certain stock option grants awarded primarily during the years 1998-2001 differ from the measurement dates previously used to determine any stock-based compensation expense for the years 1998-2002. The Company has determined that for certain option grants the allocations to individual recipients and/or the proper documentation of formal corporate approvals had not been completed as of the original accounting measurement dates. As a result, new accounting measurement dates are being applied to the affected option grants. As the majority of the stock options in question were cancelled in an option exchange program in 2002, the new measurement dates will not affect operating results for 2003 and subsequent years.

The Company expects to make accounting adjustments to stockholders' equity as at December 31, 2002 and on the balance sheets for all subsequent periods. The effect of the adjustments will be to increase capital stock and paid-in capital and increase accumulated deficit on all balance sheets commencing in 2003. These are offsetting reclassification entries within stockholders' equity on the balance sheet and the total amount of stockholders' equity in 2003 and subsequent balance sheets will not change. The amount of the adjustment within stockholders' equity is presently estimated by the Company to be less than $100 million. The Company does not expect any restatements of income statements or statements of cash flows in 2003 or subsequent periods. The Company also expects that there will be no impact on the Company's cash position or previously reported revenues.

The review of stock option awards practices has only recently become substantially completed and the restatement of stockholders' equity at December 31, 2002 and subsequent balance sheets has not yet been concluded. For this reason, the Company did not file its Quarterly Report on Form 10-Q on the due date of August 11, 2006. The Company is using its best efforts to complete and file the Quarterly Report on Form 10-Q for the quarter ended July 2, 2006 as soon as practicable as well as to complete and file with the Securities and Exchange Commission the following additional forms: (i) Annual Report on Form 10-K/A for 2005 containing the restated financial statements for the periods required, and (ii) Quarterly Report on Form 10-Q/A for the first quarter ended April 2, 2006 containing restated balance sheets. As described above, the Company presently believes that certain of its financial statements will not be changed. However, pending final completion of Audit Committee's review and review by the Company's independent public accountants, the Company's prior financial statements and all financial press releases and similar communications issued by the Company should not be relied upon.

49.     In effect, during the relevant period, the Defendants caused PMC-Sierra's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed PMC-Sierra to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of PMC-Sierra's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

50.     Plaintiff brings this action derivatively in the right and for the benefit of PMC-Sierra to redress injuries suffered and to be suffered by PMC-Sierra as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

51.     Plaintiff will adequately and fairly represent the interests of PMC-Sierra and its shareholders in enforcing and prosecuting its rights.

52.     Plaintiff is an owner of PMC-Sierra stock and was an owner of PMC-Sierra stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

53.     Based upon the facts set forth throughout this Complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the PMC-Sierra Board of Directors to institute this action against the officers and members of the PMC-Sierra Board of Directors is excused as futile.  A pre-filing demand would be a useless and futile act because:

(a)     The members of PMC-Sierra's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein.  These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b)     The PMC-Sierra Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from PMC-Sierra's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.  As a result of their access to and review of internal corporate documents, or conversations and connections with other corporate officers, employees, and directors and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting.  Pursuant to their specific duties as Board members, the Director Defendants are charged with the management of the Company and to conduct its business affairs.  Defendants breached the fiduciary duties that they owed to PMC-Sierra and its shareholders in that they failed to prevent and correct the improper stock option granting and financial reporting.  Certain directors are also dominated and controlled by other directors and cannot act independently of them.  Thus, the PMC-Sierra Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did.

(c)     The acts complained of constitute violations of the fiduciary duties owed by PMC-Sierra's officers and directors and these acts are incapable of ratification.

(d)     The members of PMC-Sierra's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action.

(e)     Any suit by the current directors of PMC-Sierra to remedy these wrongs would likely further expose the liability of Defendants under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of the Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

(f)     PMC-Sierra has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or others who were responsible for that wrongful conduct to attempt to recover for PMC-Sierra any part of the damages PMC-Sierra suffered and will suffer thereby.

(g)     In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves and the other Defendants, requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties. This they will not do.

(h)     PMC-Sierra's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance which they caused the Company to purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of PMC-Sierra. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions which eliminate coverage for any action brought directly by PMC-Sierra against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of PMC-

1   Sierra, there would be no directors' and officers' insurance protection and thus, this is a further

2   reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as

3   this action is brought, such insurance coverage exists and will provide a basis for the Company to

4   effectuate a recovery.

5              (i)      In order to bring this action for breaching their fiduciary duties, the members

6   of the PMC-Sierra Board would have been required to sue themselves and/or their fellow directors

7   and allies in the top ranks of the Company, who are their personal friends and with whom they have

8   entangling financial alliances, interests and dependencies, which they would not do.

9        54.    Plaintiff has not made any demand on shareholders of PMC-Sierra to institute this

10  action since such demand would be a futile and useless act for the following reasons:

11             (a)      PMC-Sierra is a publicly traded company with approximately 208 million

12  shares outstanding, and thousands of shareholders;

13             (b)      Making demand on such a number of shareholders would be impossible for

14  plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

15             (c)      Making demand on all shareholders would force plaintiff to incur huge

16  expenses, assuming all shareholders could be individually identified.

17  **THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT**
    **ON PMC-SIERRA'S FINANCIAL STATEMENTS**
18
    **The Fiscal 1998 Form 10-K**
19
20       55.    On or about March 26, 1999, the Company filed its fiscal 1998 Form 10-K with the

21  SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public.

    The fiscal 1998 Form 10-K included PMC-Sierra's fiscal 1998 financial statements which were
22
    materially false and misleading and presented in violation of GAAP, due to its improper accounting
23
    for the backdated stock options. As a result, PMC-Sierra's compensation expense was understated
24
    and its net earnings were overstated.
25
    **The Fiscal 1999 Form 10-K**
26
27       56.    On or about March 20, 2000, the Company filed its fiscal 1999 Form 10-K with the

28  SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public.

1  The fiscal 1999 Form 10-K included PMC-Sierra's fiscal 1999 financial statements which were

2  materially false and misleading and presented in violation of GAAP, due to its improper accounting

3  for the backdated stock options.  As a result, PMC-Sierra's compensation expense was understated

4  and its net earnings were overstated.

5  **The Fiscal 2000 Form 10-K**

6      57.    On or about April 2, 2001, the Company filed its fiscal 2000 Form 10-K with the

7  SEC.  The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public.

8  The fiscal 2000 Form 10-K included PMC-Sierra's fiscal 2000 financial statements which were

9  materially false and misleading and presented in violation of GAAP, due to its improper accounting

10  for the backdated stock options.  As a result, PMC-Sierra's compensation expense was understated

11  and its net earnings were overstated.

12  **The Fiscal 2001 Form 10-K**

13      58.    On or about March 28, 2002, the Company filed its fiscal 2001 Form 10-K with the

14  SEC.  The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public.

15  The fiscal 2001 Form 10-K included PMC-Sierra's fiscal 2001 financial statements which were

16  materially false and misleading and presented in violation of GAAP, due to its improper accounting

17  for the backdated stock options.  As a result, PMC-Sierra's compensation expense was understated

18  and its net earnings were overstated.

19  **The Fiscal 2002 Form 10-K**

20      59.    On or about March 28, 2003, the Company filed its fiscal 2002 Form 10-K with the

21  SEC.  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.

22  The fiscal 2002 Form 10-K included PMC-Sierra's fiscal 2002 financial statements which were

23  materially false and misleading and presented in violation of GAAP, due to improper accounting for

24  the backdated stock options.  As a result, PMC-Sierra's compensation expense was understated and

25  its net earnings were overstated.

26  **The Fiscal 2003 Form 10-K**

27      60.    On or about March 12, 2004, the Company filed its fiscal 2003 Form 10-K with the

28  SEC.  The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

1 The fiscal 2003 Form 10-K included PMC-Sierra's fiscal 2003 financial statements which were

2 materially false and misleading and presented in violation of GAAP, due to improper accounting for

3 the backdated stock options. As a result, PMC-Sierra's compensation expense was understated and

4 its net earnings were overstated.

5 **The Fiscal 2004 Form 10-K**

6      61.    On or about March 11, 2005, the Company filed its fiscal 2004 Form 10-K with the

7 SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

8 The fiscal 2004 Form 10-K included PMC-Sierra's fiscal 2004 financial statements which were

9 materially false and misleading and presented in violation of GAAP, due to improper accounting for

10 the backdated stock options. As a result, PMC-Sierra's compensation expense was understated and

11 its net earnings were overstated.

12 **The Fiscal 2005 Form 10-K**

13      62.    On or about March 9, 2006, the Company filed its fiscal 2005 Form 10-K with the

14 SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

15 The fiscal 2005 Form 10-K included PMC-Sierra's fiscal 2005 financial statements which were

16 materially false and misleading and presented in violation of GAAP, due to improper accounting for

17 the backdated stock options. As a result, PMC-Sierra's compensation expense was understated and

18 its net earnings were overstated.

19      63.    The materially false and misleading fiscal 1998-2005 Form 10-Ks described above

20 were reviewed, prepared and/or endorsed by Defendants.

21                 **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

22      64.    The 1998-2006 Proxy Statements concealed Defendants' option backdating scheme.

23 Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on

24 proxy proposals between 1998 and 2006. In fact, it was not until the Company's announcement in

25 August 2006 disclosing its ongoing internal probe that shareholders learned that the Proxy

26 Statements which they had relied upon for years were false and misleading. Defendants have been

27 unjustly enriched at the expense of PMC-Sierra, which has received and will receive less money

28

1 from the Defendants when they exercise their options at prices substantially lower than they would

2 have if the options had not been backdated.

3 **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

4 65.    Unlike most companies which avoid such option backdating abuse by issuing stock

5 option grants at the same time each year, which eliminates the potential for backdating, Defendants

6 ensured that executives would not have any such restrictions.  Given the many times PMC-Sierra's

7 grants were the low of the month in which options were granted, the date of their stock option grants

8 was clearly more than merely coincidental.

9 66.    As a result of the backdating of options, Defendants have been unjustly enriched at

10 the expense of PMC-Sierra, which has received and will receive less money from Defendants when

11 they exercise their options at prices substantially lower than they would have if the options had not

12 been backdated.

13 **TOLLING OF THE STATUTE OF LIMITATIONS**

14 67.    The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully

15 concealed their manipulation of the stock option plans, through strategic timing and fraudulent

16 backdating, by issuing false and misleading Proxy Statements, by falsely reassuring PMC-Sierra's

17 public investors that PMC-Sierra's option grants were being administered by a committee of

18 independent directors, and by failing to disclose that backdated options were, in fact, actually issued

19 on dates other than those disclosed, and that strategically timed option grants were issued based on

20 the manipulation of insider information that ensured that the true fair market value of the Company's

21 stock was, in fact, higher than the publicly traded price on the date of the option grant.

22 68.    PMC-Sierra's public investors had no reason to know of the Defendants' breaches of

23 their fiduciary duties until August 2006, when the Company announced its investigation into past

24 practices related to its stock option grants.

25 69.    Finally, as fiduciaries of PMC-Sierra and its public shareholders, the Defendants

26 cannot rely on any limitations defense where they withheld from PMC-Sierra's public shareholders

27 the facts that give rise to the claims asserted herein, *i.e.,* that the PMC-Sierra Board had abdicated its

28 fiduciary responsibilities to oversee the Company's executive compensation practices, and that the

1   option grant dates had been manipulated to maximize the profit for the grant recipients and,

2   accordingly, to maximize the costs for the Company.

### COUNT I

**Violations of §10(b) and Rule 10b-5 of the Exchange Act
Against All Defendants**

70.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

71.   Throughout the relevant period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct which allowed certain of the Company's officers and directors, including some of the Defendants, to receive improper option grants and make no recompense to the Company.

72.   Defendants employed devices, schemes and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about PMC-Sierra not misleading.

73.   Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein.  Through their positions of control and authority as officers of the Company, each of the Defendants was able to and did control the conduct complained of herein and the content of the public statements disseminated by PMC-Sierra.

74.   Defendants acted with scienter throughout the relevant period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.  Defendants were among the senior management of the Company, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports and filings with the SEC.

75.     Each of the Defendants participated in a scheme to defraud with the purpose and effect of defrauding PMC-Sierra.

76.     By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violations of §14(a) of the Exchange Act Against All Defendants

77.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

78.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

79.     The 1998-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the Defendants were causing PMC-Sierra to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1998.

80.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

81.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

82.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT III

### Violations of §20(a) of the Exchange Act Against
### All Defendants

83.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84.     The Defendants, by virtue of their positions with PMC-Sierra and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of PMC-Sierra within the meaning of §20(a) of the Exchange Act.  They had the power and influence and exercised the same to cause PMC-Sierra to engage in the illegal conduct and practices complained of herein.

## COUNT IV

### Accounting

85.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

86.     At all relevant times, Defendants, as directors and/or officers of PMC-Sierra, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

87.     In breach of their fiduciary duties owed to PMC-Sierra and its shareholders, the Defendants caused PMC-Sierra, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of PMC-Sierra and/or failed to properly investigate whether these grants had been improperly made. By this wrongdoing, the Defendants breached their fiduciary duties owed to PMC-Sierra and its shareholders.

88.     The Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to certain of the Defendants.

89.     As a result of Defendants' misconduct, PMC-Sierra has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

90.     Plaintiff demands an accounting be made of all stock option grants made to any of the Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                - 27 -

value of the grants, the recipients of the grants, the exercise date of stock options granted to any of the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale or other exercise of backdated stock option grants received by those Defendants.

**COUNT V**

**Breach of Fiduciary Duty and/or Aiding and Abetting
Against All Defendants**

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     Each of the Defendants agreed to and did participate with Bailey and Krock and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

93.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to PMC-Sierra and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of PMC-Sierra and its shareholders.

94.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to PMC-Sierra and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

95.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward PMC-Sierra and its public shareholders.

96.     As a proximate result of Defendants' conduct, in concert with Bailey and Krock, PMC-Sierra has been injured and is entitled to damages.

**COUNT VI**

**Abuse of Control Against All Defendants**

97.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

98.    The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, PMC-Sierra, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at PMC-Sierra. As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding PMC-Sierra.

99.    Defendants' conduct constituted an abuse of their ability to control and influence PMC-Sierra.

100.    By reason of the foregoing, PMC-Sierra has been damaged.

## COUNT VII

### Gross Mismanagement Against All Defendants

101.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

102.    Defendants had a duty to PMC-Sierra and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of PMC-Sierra.

103.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of PMC-Sierra in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of PMC-Sierra's affairs and in the use and preservation of PMC-Sierra's assets.

104.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused PMC-Sierra to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to PMC-Sierra, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged PMC-Sierra.

105.    By reason of the foregoing, PMC-Sierra has been damaged.

**COUNT VIII**

**Constructive Fraud Against All Defendants**

106.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.    As corporate fiduciaries, Defendants owed to PMC-Sierra and its shareholders a duty of candor and full accurate disclosure regarding the true state of PMC-Sierra's business and assets and their conduct with regard thereto.

108.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from PMC-Sierra's shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of PMC-Sierra.  Thus they have committed constructive fraud and violated their duty of candor.

109.    By reason of the foregoing, PMC-Sierra has been damaged.

**COUNT IX**

**Corporate Waste Against All Defendants**

110.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

111.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused PMC-Sierra to waste valuable corporate assets.

112.    As a result of Defendants' corporate waste, they are liable to the Company.

**COUNT X**

**Unjust Enrichment Against All Defendants**

113.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

114.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of PMC-Sierra, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

115.   All the payments and benefits provided to the Defendants were at the expense of PMC-Sierra. The Company received no benefit from these payments. PMC-Sierra was damaged by such payments.

116.   Certain of the Defendants sold PMC-Sierra stock for a profit during the period of deception, misusing confidential non-public corporate information.  These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of PMC-Sierra.  A constructive trust for the benefit of the Company should be imposed thereon.

**COUNT XI**

**Against the Officer Defendants for Rescission**

117.   Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

118.   As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and PMC-Sierra entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreement and the Company's stock option plan which was also approved by PMC-Sierra shareholders and filed with the SEC.

119.   All contracts which provide for stock option grants between the Officer Defendants and PMC-Sierra and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

**COUNT XII**

**Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

120.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

121.   At the time that the Insider Selling Defendants sold their PMC-Sierra common stock as set forth herein at ¶46, by reason of their high executive and/or directorial positions with PMC-

1    Sierra, the Insider Selling Defendants had access to highly material information regarding the

2    Company, including the information set forth herein regarding the true adverse facts of PMC-

3    Sierra's improper accounting.

4        122.    At the time of such sales, that information was not generally available to the public or

5    the securities markets. Had such information been generally available, it would have significantly

6    reduced the market price of PMC-Sierra shares at that time.

7        123.    The Insider Selling Defendants, and each of them, had actual knowledge of material,

8    adverse non-public information and thus sold their PMC-Sierra common stock in California in

9    violation of California Corporations Code §25402.

10       124.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants,

11   and each of them, are liable to PMC-Sierra for damages in an amount up to three times the difference

12   between the price at which PMC-Sierra common stock was sold by these defendants, and each of

13   them, and the market value which that PMC-Sierra common stock would have had at the time of the

14   sale if the information known to these defendants, and each of them, had been publicly disseminated

15   prior to that time and a reasonable time had elapsed for the market to absorb the information.

16                                      **COUNT XIII**

17        **Against the Insider Selling Defendants for Breach of Fiduciary**
          **Duties for Insider Selling and Misappropriation of Information**
18

19       125.    Plaintiff incorporates by reference and realleges each and every allegation set forth

      above, as though fully set forth herein.
20

21       126.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the

      information described above, and sold PMC-Sierra common stock on the basis of such information.
22

23       127.    The information described above was proprietary non-public information concerning

      the Company's financial condition and future business prospects. It was a proprietary asset
24

25   belonging to the Company, which the Insider Selling Defendants used for their own benefit when

      they sold PMC-Sierra common stock.
26

27       128.    At the time of their stock sales, the Insider Selling Defendants knew that the

      Company's revenues were materially overstated. The Insider Selling Defendants' sales of PMC-
28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 32 -

1  Sierra common stock while in possession and control of this material adverse non-public information

2  was a breach of their fiduciary duties of loyalty and good faith.

3  129.   Since the use of the Company's proprietary information for their own gain constitutes

4  a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

5  imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

6  **PRAYER FOR RELIEF**

7  WHEREFORE, plaintiff demands judgment as follows:

8  A.   Awarding money damages against all Defendants, jointly and severally, for all losses

9  and damages suffered as a result of the acts and transactions complained of herein, together with pre-

10  judgment interest, to ensure Defendants do not participate therein or benefit thereby;

11  B.   Directing all Defendants to account for all damages caused by them and all profits

12  and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

13  including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

14  imposing a constructive trust thereon;

15  C.   Directing PMC-Sierra to take all necessary actions to reform and improve its

16  corporate governance and internal control procedures to comply with applicable law, including, but

17  not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's

18  By-Laws or Articles of Incorporation and taking such other action as may be necessary to place

19  before shareholders for a vote adoption of the following Corporate Governance policies:

20  (i)   a proposal requiring that the office of CEO of PMC-Sierra and Chairman of

21  the PMC-Sierra Board of Directors be permanently held by separate individuals and that the

22  Chairman of the PMC-Sierra Board meets rigorous "independent" standards;

23  (ii)   a proposal to strengthen the PMC-Sierra Board's supervision of operations

24  and develop and implement procedures for greater shareholder input into the policies and guidelines

25  of the Board;

26  (iii)   appropriately test and then strengthen the internal audit and control function;

27  (iv)   rotate independent auditing firms every five years;

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 33 -

1           (v)     control and limit insider stock selling and the terms and timing of stock option

2    grants; and

3           (vi)    reform executive compensation.

4        D.    Ordering the imposition of a constructive trust over Defendants' stock options and

5    any proceeds derived therefrom;

6        E.    Awarding punitive damages;

7        F.    Awarding costs and disbursements of this action, including reasonable attorneys',

8    accountants', and experts' fees; and

9        G.    Granting such other and further relief as this Court may deem just and proper.

10   **JURY DEMAND**

11       Plaintiff demands a trial by jury.

12   DATED:  August 29, 2006

          LERACH COUGHLIN STOIA GELLER
            RUDMAN & ROBBINS LLP
          SHAWN A. WILLIAMS

                        SHAWN A. WILLIAMS

          100 Pine Street, Suite 2600
          San Francisco, CA  94111
          Telephone: 415/288-4545
          415/288-4534 (fax)

          LERACH COUGHLIN STOIA GELLER
            RUDMAN & ROBBINS LLP
          WILLIAM S. LERACH
          DARREN J. ROBBINS
          TRAVIS E. DOWNS III
          655 West Broadway, Suite 1900
          San Diego, CA  92101-3301
          Telephone: 619/231-1058
          619/231-7423 (fax)

          THE WEISER LAW FIRM, P.C.
          ROBERT B. WEISER
          121 N. Wayne Avenue, Suite 100
          Wayne, PA  19087
          Telephone: 610/225-2677
          610/225-2678 (fax)

          Attorneys for Plaintiff

28   S:\CptDraft\Derivative\Cpt PMC-Sierra Derv.doc

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3    named parties, there is no such interest to report.

4

5

6                                              _____
                                               ATTORNEY OF RECORD FOR PLAINTIFF
7                                              DR. IAN BEISER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PMC-SIERRA, INC. VERIFICATION

I, Dr. Ian Beiser hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _8/28/06_

_____
**Dr. Ian Beiser**