**\*E-FILED 5/8/08\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re PMC-SIERRA, INC. DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>   ALL ACTIONS. | Master File No. C 06-05330 RS<br><br>**ORDER RE MOTIONS TO DISMISS AND RE MOTION FOR LEAVE TO CONDUCT DISCOVERY** |

## I. INTRODUCTION

This is a shareholder's derivative action based on allegations that nominal defendant PMC-Sierra "back-dated" grants of stock options. In August of 2007, the Court granted defendants' motion to dismiss based on the failure to allege the requisite particularized facts demonstrating that demand on PMC-Sierra's board of directors to pursue these claims would have been futile. Specifically, the Court concluded that plaintiffs had failed to allege facts sufficient to show that any of the designated stock options grants had been knowingly backdated.

Plaintiffs' amended complaint focuses on a more limited number of option grants than were at issue in the prior complaint and omits allegations that various grants occurring more recently in time were backdated. Having elected to target this particular subset of option grants, plaintiffs now face the dilemma that a majority of the PMC-Sierra's board members whom plaintiffs claim are

1  tainted for demand purposes were not even seated on the board at the time of the alleged
2  wrongdoing.  For that reason, and for others explained below, defendants' motions to dismiss will be
3  granted, with one final opportunity to amend.   The motion of various individual defendants to
4  dismiss for lack of personal jurisdiction, however, will be denied, as will plaintiffs' motion for leave
5  to conduct discovery.

## II.  DISCUSSION[1]

### A.  Demand futility

As discussed in the prior order, a shareholder seeking to bring a derivative claim on behalf of a corporation must either first make a demand on the board of directors that the corporation institute suit, or allege that such demand would be "futile."   To plead demand futility adequately, a plaintiff must allege "particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir.1999) (citing *Aronson v. Lewis*, 473 A.2d 805, 815 (Del.1984) for the two prong test; other citations omitted). Although the *Aronson* court used  the conjunctive, later cases have treated the two prongs of the test as disjunctive. "If a derivative plaintiff can demonstrate a reasonable doubt as to the first or second prong of the *Aronson* test, then he has demonstrated that demand would have been futile." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del.Ch.1995).  Alternatively, "[w]here there is no conscious decision by directors to act or refrain from acting," Delaware courts inquire whether the complaint raises "a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del.1993).

In the prior complaint, plaintiffs alleged that twenty-five specific PMC-Sierra option grants were knowingly backdated.   In ruling on the initial motion to dismiss, the Court observed that while the complaint alleged intentional backdating,  to make that claim plaintiffs were relying entirely on

---

[1] General factual background and the legal standards particular to this action were described in the prior order and will not be repeated here.

2

an *inference* that the specified option grants *might* have been knowingly backdated. Consistent with the decisions of other courts in this District, the prior order rejected the methodology by which plaintiffs were attempting to support that inference. See Order filed August 22, 2007 (citing *In re Linear Tech. Corp. Derivative Litigation*, 2006 WL 3533024 (N.D. Cal December 07, 2006); *In re CNET Networks, Inc.*, 483 F.Supp.2d 947 (N.D. Cal 2007); *In re Openwave Systems Inc. Shareholder Derivative Litigation*, 2007 WL 1456039 (ND. Cal. May 17, 2007).

In the present complaint, plaintiffs now contend that fourteen specific stock option grants labeled as having been made between 1996 and 2001 were knowingly and wrongfully backdated. While plaintiffs do not specifically allege when these fourteen options may have actually been granted, they advance no particularized facts from which it would be reasonable to presume that backdating occurred in or after 2003. There is no dispute that when this action was filed, PMC-Sierra's board of directors consisted of seven persons, four of whom joined the board in 2003 or later. Thus, even assuming plaintiffs had alleged sufficient facts to find intentional backdating may have taken place with respect to the fourteen option grants they identify, plaintiffs have not made particularized allegations sufficient to show that a majority of the board had any connection to such purported wrongdoing or was otherwise precluded from assessing a demand premised on those grants.

Plaintiffs argue that they have nonetheless alleged sufficient facts to establish demand futility because the fourteen options they contend were backdated are a "mere sample" and that backdating at PMC-Sierra continued long after the particular grants identified. It appears, however, that plaintiffs made a conscious choice in the amended complaint not to challenge any stock options granted after the enactment of the Sarbanes-Oxley Act.[2] Plaintiffs cannot on the one hand decline to allege with particularity what stock options were backdated after 2001 but then argue that persons joining the board in 2003 and thereafter are disqualified from responding to a litigation demand. Accordingly,

---

[2] There is no dispute that passage of the Sarbanes-Oxley Act significantly impedes, but does not rule out, intentional backdating. See *In re Zoran Corp. Derivative Litigation*, 2007 WL 1650948, * 1006 (N.D. Cal. June 05, 2007) ("Management no longer has the latitude to backdate as far back. The Form 4 requirement has cramped their style.")

3

1  plaintiffs have failed to allege sufficient facts to establish demand futility.[3]

2  Apart from the timing issue, plaintiffs have also failed to cure the defects identified in the
3  prior order. As noted, that order joined other decisions in this district in rejecting the methodology of
4  looking to a 20 day "window" to support an inference of backdating. Plaintiffs now argue that they
5  have supported the inference of backdating with both a "Merrill-Lynch" analysis and by using the
6  methodology of the Center for Financial Research and Analysis ("CFRA"). Plaintiffs, however,
7  concede that they have *modified* both of those methodologies. As such, plaintiffs are in much the
8  same position as the plaintiffs in *In re CNET Networks, Inc.*, 483 F.Supp.2d 947 (N.D. Cal 2007),
9  That court observed:

> Plaintiffs state that their "analysis [of the options] follows in the footsteps of the widely-accepted analytical model used by The Wall Street Journal and the CFRA to reveal the nationwide backdating scandal" . . ... Similarly, in the complaint plaintiffs pleaded that they "employ[ed] a widely accepted analytical model for detecting backdated options-the price action of an issuer's common stock twenty days before and twenty days after the date of grant" [citation]. It seems, however, that plaintiffs *only followed those footsteps halfway*.

15  483 F.Supp.2d at 957 (emphasis added).

16  Here too, plaintiffs have followed the Merrill-Lynch and CFRA footsteps only halfway. As
17  noted in the prior order, plaintiffs in actions like these are not necessarily required to perform a
18  "Merrill-Lynch" or any other specific analysis. Plaintiffs are, however, obligated to show that their
19  particularized allegations support an inference that grants of stock options were backdated.  Plaintiffs
20  have yet to meet that burden.

21  Plaintiffs contend that a recent decision from the courts of Delaware (whose substantive law is
22  applicable here) suggests that courts in this District may have been applying a "harsher standard"
23  than is warranted when evaluating the adequacy of demand futility allegations. See *Conrad v. Blank*
24  940 A.2d 28, 38 n.22 (Del 2007). The plaintiff in *Conrad*, however, apparently supported her claims
25  with " the same analysis" –the Merrill-Lynch analysis – approved *in Ryan v. Gifford*, 918 A.2d 341
26  (Del.Ch. 2007). See *Conrad*, 940 A.2d at 40 n.30. Plaintiffs here undisputedly have *not* employed

---

[3] Plaintiffs' allegations that PMC-Sierra employees manipulated the "Equity Edge"database fails to link such purported misconduct to any of the allegedly backdated option grants.

4

that "same analysis." Thus, even to the extent that *Conrad* might be seen as critical of the jurisprudence in this district, plaintiffs have not shown that they have pleaded particularized facts supporting demand futility within the standard applied in *Conrad.*

### B. Leave to amend

When opposing the prior motions to dismiss, plaintiffs expressly requested leave to amend were the Court to grant the motions. This time plaintiffs have argued only that the motions to dismiss should be denied and have not suggested that they could further amend to address the issues identified by defendants and in this order. That said, the pleading defect that the challenged option grants predate four director's membership on the board arose for the first time in the amended complaint. Similarly, the pleading deficiencies discussed below were not the subject of the Court's ruling on the initial motion to dismiss. Given that plaintiffs have not had an opportunity to respond to these issues, they will be granted leave to amend one final time.

### C. Rule 12 (b) (6)

Separate and apart from the "demand futility" arguments, defendants move to dismiss under Rule 12(b)(6), arguing that plaintiffs have failed to state a claim. In light of the conclusion that plaintiffs have yet to allege demand futility with adequate specificity, the Court need not reach all of those contentions. Nevertheless, in the interest of judicial efficiency, the Court observes that any amended complaint should address the fact that named plaintiff Ian Beiser was not a shareholder until after many of the challenged transactions. Plaintiffs' suggestion that Beiser has standing to assert claims under either a theory of a "continuing scheme of wrongdoing" or "fraudulent concealment" are not persuasive.

Additionally, any amended complaint must more clearly delineate each defendant's alleged role in the purported wrongdoing and show that each defendant had the requisite scienter. The complaint's "group pleading" is simply not sufficient. See *In re Netopia, Inc.*, 2005 WL 3445631, at *6 (N.D.Cal.2005) (Whyte, J.) ("[P]laintiffs cannot rely on the group-published information doctrine.")

5

### D. Jurisdiction

Various individual defendants have moved to dismiss based on a purported lack of personal jurisdiction. Defendants acknowledge, however, that the Court has nationwide jurisdiction with respect to the federal securities law claims. Thus, the Court's jurisdiction over individual defendants resident in the United States rises or falls with the pleading issues addressed above. The motion to dismiss for lack of jurisdiction with respect to such defendants is therefore denied, without prejudice to their right to challenge the adequacy of any amended pleading. They are directed, however, not to file separate motions to dismiss on jurisdictional grounds.

Individual defendants who reside outside the United States make the separate and additional argument that they are not subject to personal jurisdiction because each of them purportedly lacks sufficient "minimum contacts" with California, such that maintenance of the suit would offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). The Supreme Court has held that a non-resident's allegedly intentional and tortious acts expressly aimed at a California resident are sufficient to trigger jurisdiction over that non-resident. *Calder v. Jones*, 465 U.S. 783, 789-90. (1984). Here, the non-resident defendants are charged with participating in the governance of a California-based corporation, and the claims for relief arise directly from those alleged activities. Whether or not defendants' activities ultimately will be found to be wrongful is not the point; defendants cannot reasonably argue that it offends "traditional notions of fair play and substantial justice" to ask them to defend in a California court the conduct they undertook in connection with a California based corporation. Accordingly, the motion of non-United States defendants to dismiss for lack of personal jurisdiction is denied.

### E. Discovery

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Publ. No. 104-67 (codified as amended at 15 U.S.C. §§ 77a et. seq.) imposes a stay on discovery until such time as plaintiffs have filed a complaint that meets applicable pleading standards. Although they have not

fully conceded that PSLRA applies to this derivative action, plaintiffs have moved for relief from that stay. Plaintiffs argue that unless they are permitted to undertake discovery, wrongful conduct by defendants may go unremedied.

The motion is denied. Whatever rights plaintiffs may have under Delaware law to seek corporate records are matters that plaintiffs must pursue, if at all, in the Delaware courts. As to discovery in this proceeding, "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *SG Cowen Securities Corp. v. U.S. Dist. Court for Northern Dist. of CA*, 189 F.3d 909, 913 (9th Cir. 1999). At its essence, plaintiffs' request for leave to conduct discovery is based on no more than their desire to "uncover facts sufficient to satisfy the Act's pleading requirements." *Id.* Under Ninth Circuit law, that is insufficient.

### III.  CONCLUSION

The complaint herein is dismissed, with leave to amend. Any amended complaint shall be filed within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: May 8, 2008

RICHARD SEEBORG
United States Magistrate Judge

ORDER RE MOTIONS TO DISMISS
C 06-05330 RS

7

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Aelish Marie Baig    AelishB@csgrr.com

Ellen Kinsley Brown    ellen.brown@lw.com

Travis E. Downs , III    travisd@csgrr.com, e_file_sd@csgrr.com

David Christopher Fortney    david.fortney@lw.com

Patrick Edward Gibbs    patrick.gibbs@lw.com, zoila.aurora@lw.com

David Martin Goldstein    dave@daveglaw.com, marlene@daveglaw.com

Benny Copeline Goodman , III    bennyg@csgrr.com, e_file_sd@csgrr.com

William S. Lerach    e_file_sf@lerachlaw.com

Maria V. Morris    mmorris@rbg-law.com

Shawn A. Williams    shawnw@csgrr.com, aelishb@csgrr.com, cwood@csgrr.com, e_file_sd@csgrr.com, e_file_sf@csgrr.com, khuang@csgrr.com, moniquew@csgrr.com, travisd@csgrr.com

Monique C. Winkler    e_file_sd@csgrr.com, E_File_SF@csgrr.com, shawnw@csgrr.com, travisd@csgrr.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 5/8/08**                                                          **Richard W. Wieking, Clerk**

                                                                                    **By:      Chambers**

ORDER RE MOTIONS TO DISMISS
C 06-05330 RS

8